## Grace Lowe, Appellee, v. Alton Baking and Catering Company, Appellant.

1. NEGLIGENCE—*competency of other accidents.* Evidence of
other accidents occurring from the same cause is competent not
for the purpose of showing independent acts of negligence but as
tending to show the common cause of these accidents was a dan-
gerous and unsafe thing.

2. INSTRUCTIONS—*when as to province of jury proper.* An in-
struction is proper which tells the jury that the question of neg-

ligence on the part of the defendant and that the exercise of reasonable care on the part of the plaintiff are questions of fact for the jury to determine under the law and the evidence in the case.

3. INSTRUCTIONS—*limiting effect of* ° *evidence.* Evidence which for one purpose is incompetent, is properly limited by instruction to the competent purpose.

Trespass on the case. Appeal from the City Court of East St. Louis; the Hon. THOMAS F. FERNS, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed August 5, 1910. Rehearing denied October 27, 1910. *Certiorari* denied by Supreme Court (making opinion final).

JOHN F. BRENHOLT and E. W. EGGMANN, for appellant.

B. J. O'NEILL and E. G. MERIWETHER, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee claimed to have been made ill by eating ice cream made and sold by appellant. She brought suit, charging in her declaration, that appellant negligently failed to exercise due care and caution to keep the cans in which it packed its ice cream, free from dirt and filth, deleterious and dangerous to human health and life; that by reason of such unwholesome and unclean conditions, the ice cream packed in said cans, coming in contact with the same and so delivered to its patrons and customers, also became dangerous to human health and life; that appellee ate of the ice cream furnished by appellant packed in such cans and became sick.

The general issue was filed and the case has been tried three times before three separate trial judges with a jury; all of the trials resulted in a verdict in favor of appellee. The first jury assessed appellee's damages at $750, the second at $999, and the third, from which this appeal is prosecuted, at $969.44.

The facts in the case are shown by the record to be substantially as follows: On the evening of May 24, 1907, fourteen members of the graduating class of the

Upper Alton High School, together with their principal, Professor Haywood Coffield, his wife and child, attended a banquet at the residence of T. A. Rice in that city, whose daughter, Lutie, was a member of the class. At about half past ten o'clock they were served with refreshments, consisting of ice cream and a number of other articles of food, the ice cream being furnished by appellant. The guests departed at about half past eleven and shortly after appellee arrived at home she retired. About two hours later she was awakened by violent pains. A physician was called who found her suffering from severe cramps in the bowels and purging. She afterwards vomited blood and was at times unconscious. She was compelled to remain in bed six days and was ill between two and three months. The physician who attended her testified that her sickness was in the nature of ptomaine poisoning. Twelve of the other guests who ate the ice cream and partook to a greater or less extent of the other refreshments, testified to having been taken sick during the night in the same manner as appellee. In addition to these, one of the guests, Mrs. Todd, a daughter of T. A. Rice, who was present at the banquet, and who ate nothing but the ice cream, was taken sick in the night in the same manner as appellee and the others. It was also known that two other persons who ate ice cream and other food were not sick. Appellee ate bread and butter, drank hot chocolate and then ate ice cream and cake. The ice cream was delivered at the Rice home about 6 o'clock P. M., packed in ice, in a wooden tub covered with burlap and was placed in a corner of the kitchen, where it remained until it was time to serve it. There were three cans delivered but only two of them used. Two daughters of Mr. Rice testified that as the cans were removed from the tub, a towel dipped in warm water was wrapped around them, the lid removed and the cream turned out on a bread board, which was washed for

the purpose, sliced and served; that when the cans were opened, pieces of paper appeared on the top of the cream but not elsewhere. They and another daughter of Mr. Rice testified they examined the cans next morning and found they were rusted on the inside and that in the corners and cracks was a dark, sticky, dirty looking substance, which could not be easily removed by washing and had to be scraped out with a knife. One of them testified that the substance found was decayed and putrid. Three witnesses on the part of appellant, who were connected with the operation of its business testified that every can used by them to pack ice cream in was washed, dried and placed on a dry rack and before being further used, was placed in boiling water and again wiped out and dried; that the cream was protected in the cans by oiled paper made for the purpose; that the cans in question here, when returned to appellant on the day after the banquet, were found without any scratch of a knife upon them, in a clean condition and with no evidence of any improper or deleterious substance having been in them.

A chemist produced as a witness on the part of appellant, stated that ptomaines had no life so that they could not be destroyed or affected by boiling water; that there was nothing in them to kill. Dr. Campbell, a witness for appellee, testified that if the cans were in the condition testified to by the two Rice girls and their sister, Mrs. Todd, and the ice cream came in contact with the decayed substance, ptomaines would form and in a short time permeate the ice cream.

The conditions presented by the evidence appear to us to be substantially as follows: Nearly all of the guests at the banquet were made ill and their sickness was caused by something they ate, appellee claiming that it was caused by the ice cream and appellant that it might have been caused, as well, by some of the other of the many articles of food furnished. Bearing upon the question as to whether it was the ice cream

and not the other food which caused the sickness, it appears that one person who ate nothing but the ice cream was sick in the same manner as the others; that there was found in the cans containing the ice cream, a dark, sticky, putrid substance, which a physician testified would cause the formation of ptomaines; and that appellee was afflicted with what her attending physician believed to be ptomaine poisoning. It is true there was a controversy in the testimony as to whether the cans in question contained the deleterious and dangerous substance mentioned.

Three witnesses, however, swore positively to finding the substance in the cans, while an equal number on the part of appellant swore to the custom of the ice cream factory and to circumstances which tended to preclude the possibility of such substance ever being found in their cans. The members of three juries however, who have heard the case, have found the facts in favor of appellee, and we are of opinion that the facts, as presented to us by the record in the last trial, sustain such a finding.

Appellant insists that the court erred in admitting the testimony of other banqueters, that they became ill shortly after the banquet in the same manner as appellee. Our courts have held that evidence of other accidents, occuring from the same cause, is competent, not for the purpose of showing independent acts of negligence, but as tending to show the common cause of these accidents as a dangerous, unsafe thing. Chicago v. Jarvis, 226 Ill. 614; Bloomington v. Legg, 151 Ill. 9; Rowlands v. Elgin, 66 Ill. App. 66.

It appears to us entirely proper that the other guests at the banquet should have been permitted to state whether they were or were not affected in the same manner as appellee as bearing upon the question whether such illness was or was not produced by food served at the banquet.

Appellant complains also of instruction No. 1 given for appellee. This instruction told the jury that the

question of negligence on the part of appellant, and the exercise of reasonable care on the part of appellee, were questions of fact for the jury to determine under the law and the evidence in the case. This instruction was approved in C. & J. Elec. Ry. Co. v. Patton, 219 Ill. 214.

Appellant also complains of the second instruction given for appellee, which told the jury that the evidence of sickness of other persons who attended the supper was admitted upon the question as to whether or not said ice cream was unwholesome and deleterious and was not to be considered as tending to show any independent act of negligence against appellant, nor upon the question of appellee's damages, if any. The evidence referred to was competent, as we have above seen, but it was proper for the court to limit its effect, as was done in the instruction.

We find no reason disclosed by the record why the judgment of the trial court should be reversed and the same is therefore affirmed.

*Affirmed.*