THIRD DISTRICT—OCTOBER, 1914.        383

Lee v. Toledo, St. Louis & Western R. Co., 190 Ill. App. 383.

# Mary E. Lee, Administratrix, Appellee, v. Toledo, St. Louis & Western Railroad Company, Appellant.

1. MASTER AND SERVANT, § 582*—*what must be shown to prove negligence, under Federal Employers' Liability Act.* In an action under the Federal Employers' Liability Act for the death of a locomotive fireman caused by a derailment, the plaintiff was not required to prove the exact point where the locomotive left the track nor that, beyond a doubt, it was derailed because of defective ties, and since the evidence showed a large percentage of rotten ties, it was a legitimate inference that the train was derailed by the rails spreading or giving away because the ties did not properly support them, wherefore a verdict of negligence was supported by the evidence.

2. MASTER AND SERVANT, § 622*—*what evidence is admissible to show negligence.* In an action for the death of a locomotive fireman caused by a derailment, evidence of the condition of the ties that were splintered and mashed by the engine was competent, when confined to the ties under the train and which it had passed over.

3. MASTER AND SERVANT, § 622*—*what conditions may be shown to prove negligence.* In an action for the death of a locomotive fireman caused by a derailment, the parties were permitted to show the condition of the roadbed at the time of, prior to and immediately after the accident, but evidence of what was done after the accident was not admissible, since if changes were made they were apt to be interpreted as an admission of negligence, and if the defendant was permitted to offer evidence on such question, the plaintiff would be entitled to rebut such evidence, and it would raise an immaterial issue.

4. MASTER AND SERVANT, § 622*—*when cross-examination improper.* In an action for the death of a locomotive fireman caused by a derailment, where a witness testified to the condition of the road just prior to the accident, a question asked of such witness as to what was done five years prior to that time was not proper cross-examination, and such question was properly excluded.

5. MASTER AND SERVANT, § 666*—*what evidence as to cause of accident improper.* In an action for the death of a locomotive fireman caused by a derailment, it was not error to sustain an objection to a question put to an expert witness as to what was the cause of the accident, as such cause was an issue for the jury.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Coles county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed October 16, 1914.

M. A. TIPSWORD and C. E. POPE, for appellant; CHARLES A. SCHMETTAU, of counsel.

S. S. ANDERSON and H. A. NEAL, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Mary E. Lee, administratrix of the estate of Robert E. Lee, deceased, brought this suit to recover damages sustained by reason of the death of the intestate averred to have been caused by the negligence of the Toledo, St. Louis & Western Railroad Company.

The declaration consists of one count and avers that on August 23, 1911, the defendant operated a railroad from the city of Charleston, Illinois, to the city of Frankfort, Indiana, and was engaged in interstate commerce; avers the passage of the Federal Liability Act entitled: "An Act relating to the Liability of Common Carriers by Railroad to their employees in certain cases," setting out the act in its entirety; avers that the intestate was a locomotive fireman in the employ of the defendant and was performing his duties on a certain passenger train, engaged in interstate commerce, running from Charleston to Frankfort; that it was the duty of defendant to exercise reasonable care to provide a reasonably safe track on which to operate said train; that in disregard of said duty defendant negligently furnished a defective track with insufficient rails, and rails not properly spiked to the ties and decayed and rotten ties, which defects defendant knew or in the exercise of reasonable care would have known, and that the locomotive by reason of said defects was thrown from the track and the intestate while in the exercise of reasonable care in the perform-

ance of his duties was killed, etc.   A jury returned a verdict for plaintiff for sixty-five hundred dollars, on which judgment was rendered and the defendant appeals.

The evidence shows that Robert E. Lee was a fireman on a locomotive engine that was hauling an eastbound passenger train engaged in interstate commerce, and that the engine left the track and turned over, killing Lee while he was engaged in the line of his duty.

It is contended that there is no proof of negligence on the part of appellant and that the court erred in refusing a peremptory instruction requested by it. The proof shows that the engine and tender and several cars left the track and turned over.   The evidence does not disclose with any degree of certainty where the first derailment was.   At one place a wheel had run on the top of a rail and marked it for several feet; there is nothing to show whether it was a wheel-mark of the locomotive or the tender or a car.   The track was badly torn up for some distance after the train left it and the ties and rails displaced.   The evidence of Dr. J. L. White is that "there were no solid ties from the engine back to where it went off the track and there were some defective ties still further back. Ties that wouldn't hold spikes."   John Replogle, after testifying that there were many decayed ties, was asked:   "What per cent. of the ties where the train apparently left the track and west of there were unsound in your judgment?" and answered that: "There were two-thirds of them that he would not count good ties."   This witness further testified that the engine apparently left the track when the rails spread apart twenty-five or thirty feet west of where the rear end of the train was when it was stopped.   At this point the ties were rotten; the rails had slipped apart over the rotten end—nothing to hold them.   J. M. Simms testified that ninety per cent. of the hardwood ties were decayed; the spikes did not seem to hold; in a por-

tion of the soft wood ties and spikes had been reset as many as three times. ''The section men went along there and marked these ties to be taken out before the wreck. They scalped them with a foot adz, the bad ones. At this point where the derailment was, about half the ties were scalped.'' Three other witnesses testified to the same effect. Some of the witnesses for appellant testified that some of the ties were in bad condition; there were a good many that were not first class.

There were some witnesses who testified for appellant that there were no rotten ties. Appellant argues that rotten ties are only shown by the evidence to have been in the track where it was torn up, east of where the engine was derailed. As we understand the evidence a large percentage of the ties are shown to be rotten or defective, not only where the track was torn up, but back as far as three hundred feet west of where it was torn up. The appellee did not have to prove the exact point where the locomotive left the track nor that, beyond a doubt, it was derailed because of the defective ties. The proof showing such a large percentage of rotten ties, it is a legitimate inference that the train was derailed by the rails spreading or giving away because the ties did not properly support them and keep them in their proper place. On a review of all the evidence, this court cannot say that the verdict, which was approved by the trial court that saw the witnesses testify, is not sustained by the evidence.

It is contended that the court erred in permitting appellee to show the condition of the ties that were splintered and mashed by the engine and cars after the engine was derailed. The evidence for appellee was confined to the ties that were under the train and west of it. No good reason is shown why everything that pertained to and was a part of the accident in which the intestate was killed was not competent.

It is also assigned for error that the court sustained objections to competent evidence offered by appellant.

The appellant sought to prove what repairs were made to the roadbed after the accident—that no substantial changes were made. The parties were permitted to show its condition at the time of, prior to and immediately after the accident. Evidence of what was done after the accident is not admissible for the reason that if changes were made they are apt to be interpreted by the jury as an admission of negligence (*City of Bloomington v. Legg*, 151 Ill. 9; *Howe v. Medaris*, 183 Ill. 288; *Chicago P. & St. L. Ry. Co. v. Lewis*, 145 Ill. 67); and if appellant was permitted to offer evidence on that question then appellee would be permitted to rebut such evidence and it would raise an immaterial issue. On the cross-examination of the witness Simms, appellant asked if the roadbed had not been rebuilt in 1906 and 1907. The court sustained an objection to the question. The witness had only testified to the condition of the roadbed just prior to the accident; what was done five years prior to that time was not cross-examination and the ruling was proper.

It is also contended that it was error to sustain an objection to a question put to one of appellant's expert witnesses. "Were you able to ascertain from the observation you made and that others made the cause of the accident?" The cause of the derailment was the issue to be tried by the jury. The court in sustaining the objection remarked it was proper for the witness to tell what he saw and discovered. There was no error in sustaining the objection.

Appellant contends that there was error in giving several instructions given at the request of appellee. On a careful examination, the objections appear to be hypercritical and without merit, and it would serve no useful end to review them at length. Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*